U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2026 JUN 15 P 2: 46

CLERK

BY _____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

LISA BRUN and DANIEL BRUN,           )
                                     )
        Plaintiffs,                  )
                                     )
            v.                       )        Case No. 2:24-cv-00846
                                     )
PEAKCM LAKE STREET HOTEL, LLP,       )
CITY OF ST. ALBANS, INTEGRATED       )
TECHNICAL SYSTEMS, INC., CROSS       )
CONSULTING ENGINEERS, P.C., AND      )
CONNER COMMUNICATIONS, INC.,         )
                                     )
        Defendants.                  )

**ENTRY ORDER GRANTING DEFENDANT'S MOTION IN LIMINE TO
EXCLUDE TESTIMONY OF PLAINTIFF'S EXPERT**
(Doc. 43)

Plaintiffs Lisa Brun and Daniel Brun (collectively, "Plaintiffs") bring this action against Defendants PeakCM Lake Street Hotel, LLP, d/b/a/ Hampton Inn ("Hampton Inn"), the City of St. Albans ("St. Albans"), Integrated Technical Systems, Inc. ("ITS"), Cross Consulting Engineers, P.C. ("Cross"), and Conner Communications, Inc. ("Conner") (collectively, "Defendants") arising out of the injuries Ms. Brun sustained after an access gate at a parking garage owned and operated by St. Albans unexpectedly closed on Ms. Brun. Plaintiffs assert a claim of negligence against Defendants.

Pending before the court is Hampton Inn's November 11, 2025 motion in limine to exclude the testimony of Plaintiffs' expert, George W. Melchior, R.A., P.E., with respect to any duty Hampton Inn had to warn Plaintiffs not to park in the garage. (Doc. 43.) Plaintiffs opposed the motion on November 25, 2025. Hampton Inn did not file a reply, and the court took the pending motion under advisement on December 12, 2025.

Plaintiffs are represented by Joshua L. Simonds, Esq. Hampton Inn is represented by Susan J. Flynn, Esq.

## I.    Factual and Procedural Background.

George W. Melchior is a licensed architect and professional engineer with over twenty years of experience. As an engineer, he "analyz[ed] and design[ed] vehicular transportation and traffic systems, including associated standards for parking facilities, driveways[,] and intersections." (Doc. 44-2 at 1.) Through his experience as a Facilities Management Director for the Department of the Navy and as a parking consultant, Mr. Melchior has "extensive experience operating and maintaining millions of square feet of parking facilities throughout the northeastern [United States], including parking system functional design, geometry and striping, and automatic entry and exit gate systems." *Id.* He supplemented his technical education and experience with a Master in Business Administration ("MBA") from the University of New Hampshire, which he earned in 2007 and during which he obtained "training in business operations, operations management, and operational risk management." *Id.* at 2. He was also "formally trained and certified in operations management, including operational risk management[,]" during his time with the U.S. Navy. *Id.*

On September 28, 2025, Mr. Melchior provided a twenty-four-page expert witness report (the "Expert Report"), the stated purpose of which was to "assess the operational risks associated with the St. Albans parking garage entry queue configuration and system mode of operations." *Id.* In developing his opinions, Mr. Melchior "visited the property on May 6[ and]7, 2024, where [he] inspected the parking garage access and exit system[s]; monitored the garage automatic gate operations; and took measurements of the entry/exit system on the southeast corner of the facility." *Id.* at 1. He also reviewed surveillance footage and photographs, as well as the complaint, answers, responses, and deposition transcripts in this case.

In reaching his conclusions, Mr. Melchior relied on operational risk management methodology and frameworks formalized and standardized by the International Organization for Standardization ("ISO") and the American National Standards Institute ("ANSI"). In particular, he considered ISO 31000, *Risk Management Guidelines*, ANSI

Z10, *Occupational Health and Safety Management Systems* (a hierarchy of health and safety controls), and ANSI Z535-2011, *Safety Alerting Standards*.

Although the vast majority of Mr. Melchior's opinions are directed to what St. Albans failed to do, he offers an additional opinion regarding any duty owed by Hampton Inn to Plaintiffs as follows:

> As explained herein, the[re] is testimony that St. Albans did prohibit motorcycle usage of the garage, and St. Albans verbally communicated that prohibition to Hampton Inn. The testimony from Hampton Inn does not align with that of St. Albans, and there is no evidence in discovery that such prohibition of motorcyclists was communicated to Hampton Inn – however, there is evidence of the prohibition by way of a decal sticker that was in place on the ticketing station leading up to the [date of injury]. As such, it is unclear what, if any, knowledge Hampton Inn had of (1) a prohibition of motorcycle use of the garage; and (2) a hazardous condition of potential gate impact to motorcyclists. However, if Hampton Inn was aware of either of these two conditions prior to the [date of injury], then Hampton Inn should not have directed Mr. and Mrs. Brun to park in the garage. Instead, with knowledge that Mr. and Mrs. Brun were traveling by motorcycle, Hampton Inn should have explicitly directed Mr. and Mrs. Brun to not park in the garage.

(Doc. 44-2 at 22.)

## II.    Conclusions of Law and Analysis.

Hampton Inn does not challenge "Mr. Melchior's qualifications as an expert generally but rather objects to the opinions he asserted with respect to any duty it may have had to the Plaintiffs to warn them of the prohibition of motorcycles in the parking garage and/or hazardous conditions therein." (Doc. 43 at 2.) It argues that Mr. Melchior's opinions must be excluded because they: (1) are "not made within his expertise as a Registered Architect and Professional Engineer"; (2) are irrelevant; (3) are not the product of reliable principles and methods reliably applied to the facts; and (4) improperly usurp the jury's role in applying the law to the facts. (Doc. 43 at 3-4.)

Under Federal Rule of Evidence 702, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue an expert may testify thereto." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993) (emphasis and internal quotation marks omitted). In

3

determining the reliability of expert testimony, the district court must engage in "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* at 592-93. Relevant factors include "the theory's testability, the extent to which it 'has been subjected to peer review and publication,' the extent to which a technique is subject to 'standards controlling the technique's operation,' the 'known or potential rate of error,' and the 'degree of acceptance' within the 'relevant scientific community.'" *United States v. Romano*, 794 F.3d 317, 330 (2d Cir. 2015) (quoting *Daubert*, 509 U.S. at 593-94). However, "the test of reliability is flexible, and *Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Restivo v. Hessemann*, 846 F.3d 547, 576 (2d Cir. 2017), *cert. denied*, 138 S. Ct. 644 (2018) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999)) (internal quotation marks omitted).

In applying Rule 702, the district court functions as a gatekeeper, ensuring "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002) (citing *Daubert*, 509 U.S. at 597) (internal quotation marks omitted). "The consideration has been aptly described . . . as one of 'fit.' 'Fit' is not always obvious, and scientific validity for one purpose is not necessarily scientific validity for other, unrelated purposes." *Daubert*, 509 U.S. at 591 (citation omitted). The party proffering expert testimony bears the burden of establishing its admissibility "by a preponderance of proof." *Id.* at 592 n.10.

Mr. Melchior's opinion regarding Hampton Inn's duty to Plaintiffs is grounded in his education and experience in operational risk management rather than his expertise in architecture and engineering. Relying on that expertise, Mr. Melchior forms his opinion by applying operational risk management methodology and frameworks formalized and standardized by the ISO and ANSI, which are considered reliable principles and methods. *See, e.g., Nike, Inc. v. StockX LLC*, 2024 WL 3361411, at *11 (S.D.N.Y. July 10, 2024) (characterizing the ISO as "a sufficiently reliable source" when determining whether to admit expert testimony); *Del Cid v. Beloit Corp.*, 901 F. Supp. 539, 545 (E.D.N.Y. 1995)

("ANSI standards are relied upon by the manufacturers of machinery and by experts in various fields to conduct evaluations of the safety of machinery and processes[.]").

In their opposition to Hampton Inn's motion, Plaintiffs characterize Hampton Inn as "part of the chain of operational control for safety in the parking garage." (Doc. 44 at 4.) The Expert Report, however, states that "St. Albans was in exclusive control over the operational infrastructure of the parking facility[.]" (Doc. 44-2 at 15.) Mr. Melchior's opinion with respect to Hampton Inn's duty therefore does not represent "a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702. It also does not appear to be based on his expertise but is, instead, a generalized opinion as to what a hotel owner should do when it knows of a physical risk to its hotel guests. In this respect, there is no "fit" between Mr. Melchior's expertise and his opinion. *Daubert*, 509 U.S. at 591 (internal quotation marks and citation omitted).

"Rule 702 requires the district court to make a third inquiry: whether the expert's testimony (as to a particular matter) will 'assist the trier of fact.'" *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005). "[E]xpert testimony that seeks to address lay matters which the jury is capable of understanding and deciding without the expert's help is not relevant and is therefore inadmissible[.]" *United States v. Jiau*, 734 F.3d 147, 154 (2d Cir. 2013) (alterations adopted) (internal quotation marks and citation omitted); *see also In re Dig. Music Antitrust Litig.*, 321 F.R.D. 64, 75 (S.D.N.Y. 2017) ("[E]xpert testimony is not helpful if it simply addresses 'lay matters which a jury is capable of understanding and deciding without the expert's help.'") (quoting *United States v. Mulder*, 273 F.3d 91, 101 (2d Cir. 2001)).

Hampton Inn claims that "Mr. Melchior's proffered testimony . . . is based solely on the conflicting deposition testimony of [Hampton Inn] and the City of St. Albans" and thereby usurps the jury's role of weighing the credibility of conflicting witnesses and applying the law to the facts. (Doc. 43 at 4.) A conditional opinion dependent on the jury's determination of witness credibility is permissible. *See Williams v. Illinois*, 567 U.S. 50, 57 (2012) ("Under settled evidence law, an expert may express an opinion that is based on facts that the expert assumes, but does not know, to be true."); *see also*

5

*McCormick v. Cleaver Brooks Co., Inc.*, 561 F. App'x 121, 123 (2d Cir. 2014) (finding that "[i]t is well within the district court's discretion to permit expert testimony" in response to hypothetical questions); *United States v. Asare*, 2019 WL 5693477, at \*5 (S.D.N.Y. Nov. 4, 2019) ("[T]here is nothing improper about [an expert witness] forming an opinion contingent on certain facts being true."). Even "[w]here the credibility of [a] witness is an issue, [an] expert may assume the truth of [the witness'] trial testimony and thereafter offer an opinion based on the substance of the testimony." *United States v. Scop*, 846 F.2d 135, 143 (2d Cir. 1988). As Plaintiffs correctly point out, Mr. Melchior "offers no opinion on what [Hampton Inn] knew or did not know, only what operational risk management princip[le]s require depending on the state of knowledge." (Doc. 44 at 5.) Accordingly, provided Mr. Melchior assumes credibility rather than weighing it, his opinion is not inadmissible as a usurpation of the jury's function.

Although Plaintiffs contend that Mr. Melchior's "opinion will assist the jury in understanding what reasonable facility operators do (or should do) when they have knowledge of hazards affecting their guests[,]" (Doc. 44 at 4), if the jury were presented with evidence of Hampton Inn's knowledge of either the garage's prohibition on motorcycles or the access gate's danger to motorcyclists, it would not need the help of an expert witness to understand those facts. *See Rivers v. Kroger Texas L.P.*, 2009 WL 2596601, at \*2 (N.D. Tex. Aug. 21, 2009) ("Expert testimony is not necessary for a jury to find that it is unreasonable for a grocery store, with actual knowledge that a water puddle exists in an aisle traversed by customers, to leave the puddle in place or to fail to warn customers of its presence. This fact is within the ken of lay jurors.").

Moreover, it is the court, not an expert witness, who instructs the jury on whether a duty exists and, if so, the law governing that duty. *See Montague v. Hundred Acre Homestead, LLC*, 2019 VT 16, ¶ 14, 209 Vt. 514, 520, 208 A.3d 609, 614 ("The existence of a duty is a question of law to be decided by the court.") (internal quotation marks and citation omitted); *Malaney v. Hannaford Bros. Co.*, 2004 VT 76, ¶ 21, 177 Vt. 123, 133, 861 A.2d 1069, 1076 ("The trial court has the duty to instruct the jury on all issues

6

essential to the case, including the standard of care that applies in a negligence action.") (internal quotation marks and citation omitted).

Because the jury can determine for itself whether it was reasonable for Hampton Inn to direct Plaintiffs to the garage if it knew the garage prohibited or posed a danger to motorcyclists, and because it is the court's responsibility to decide whether a duty exists, Mr. Melchior's opinion regarding Hampton Inn's duty is not helpful to the jury, usurps the role of the court, and is therefore inadmissible. *See* Fed. R. Evid. 702; *see also Ojeda v. Metro. Transp. Auth.*, 41 F.4th 56, 70 (2d Cir. 2022) ("It is well settled that expert testimony is unnecessary in cases where jurors are as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training.") (internal quotation marks and citation omitted).

## CONCLUSION

For the foregoing reasons, Hampton Inn's motion in limine to exclude the opinion of George W. Melchior with respect to any duty Hampton Inn had to warn Plaintiffs not to park in the garage is GRANTED. (Doc. 43.)

SO ORDERED.

Dated at Burlington, in the District of Vermont, this _15th_ day of June, 2026.

Christina Reiss, Chief Judge
United States District Court

7